UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL B. WILLS,

    Plaintiff,

v.

Case No. 21-cv-0455-bhl

KILOLO KIJAKAZI,

    Defendant,

# DECISION AND ORDER

Plaintiff Paul B. Wills seeks the reversal and remand of the Acting Commissioner of Social Security's decision denying his application for both Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

Wills applied for DIB and SSI in October 2018, alleging a disability onset date of July 16, 2018. (ECF No. 19 at 2.) His claim was denied initially and on reconsideration, so he sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on April 1, 2020. (ECF No. 16-3 at 38.) Less than a month later, the ALJ issued a decision, finding Wills "not disabled." (*Id.* at 32.) The Appeals Council denied a request for review, and this action followed. (ECF No. 19 at 2.)

## FACTUAL BACKGROUND

At the time of his hearing before the ALJ, Wills was 50 years old and living with his friend and her son. (ECF No. 16-3 at 45.) He had last worked as a truck driver about two years prior, up until he failed a Department of Transportation physical. (*Id.* at 45, 50-51.) He described a litany of health issues, including a neurogenic bladder, diabetes, a triple bypass, and "a frozen shoulder." (*Id.* at 50-51.) In his decision, the ALJ found that Wills had the following severe impairments: coronary artery disease, history of myocardial infarction, diabetes, obstructive sleep apnea, neurogenic bladder, left shoulder disorder, and clinical obesity. (*Id.* at 20-21.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, the Court "does not substitute its judgment for that of the [Acting] Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Wills takes issue with three aspects of the ALJ's decision: (1) the ALJ improperly discounted the opinion of Dr. Kevin Rosteing; (2) the ALJ's Residual Functional Capacity (RFC) determination excluded certain medically determinable limitations; and (3) the ALJ erroneously discredited Wills' self-reported symptoms. Wills also seeks remand on the grounds that the Acting Commissioner holds her position on a constitutionally illicit basis. Because none of these reasons entitle Wills to remand, the Acting Commissioner's decision will be affirmed.

### I. The ALJ Adequately Explained Why He Found Dr. Rosteing Unpersuasive.

Dr. Kevin Rosteing personally examined Wills in February 2019. (ECF No. 19 at 5.) Based on that examination, he opined that Wills could sit for 60 minutes, stand for 10 minutes, walk up to 50 feet, lift up to 10 pounds, carry up to 10 pounds, reach with his left arm only, grip or grasp up to 10 kilograms, and travel for up to two hours. (ECF No. 16-15 at 36.) The ALJ found this opinion "not persuasive." (ECF No. 16-3 at 29.)

For claims filed on or after March 27, 2017, ALJs no longer "defer or give any specific evidentiary weight . . . to any medical opinion." 20 C.F.R. §404.1520c(a). Instead, they analyze opinions by persuasive value according to several factors, the most important of which are

supportability and consistency. *Id.* An opinion is more persuasive when supported by relevant objective medical evidence and explanations. *Id.* at (c)(1). Similarly, an opinion is worth more when consistent with evidence from other sources. *Id.* at (c)(2).

In discrediting him, the ALJ wrote that Dr. Rosteing's opinions were "inconsistent with the overall evidence of record, including the opinions of [Wills'] treating cardiology providers." (ECF No. 16-3 at 29.) The ALJ also noted that Dr. Rosteing's own exam findings did not support his conclusions. (*Id.*) Indeed, the exam findings showed "normal sensory functioning, normal coordination, full motor strength, and normal gait, coordination, and station." (*Id.*) The ALJ's assessment thus adequately addresses both mandatory Section 404.1520c factors. Wills nevertheless insists that the ALJ improperly ignored contrary evidence. ALJs have a duty to confront evidence that runs counter to their conclusions. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("ALJ may not ignore an entire line of evidence that is contrary to the ruling."). They may not fashion a strawman's record, omitting anything that might support a finding of disability, and thereby deny a claimant benefits. They can, however, identify internal inconsistencies in a physician's opinion that render it untrustworthy and unfit for consideration. The ALJ in this case did the latter. He described the discrepancy between Dr. Rosteing's exam findings—that Wills "could walk on his heels and toes, hop, bend, squat, arise from a squatting position, get up from a chair, and climb on and off the examination table"—and his much more restrictive opinion. (ECF No. 16-3 at 29.) More specifically, the ALJ was justified in questioning Dr. Rosteing's credibility given his opinion that Wills had "trouble with . . . squatting," when his examination showed Wills could squat and arise from squatting without difficultly. (ECF No. 16-15 at 30.) He was similarly justified in discrediting Dr. Rosteing based on his conclusion that Wells struggled with walking while also finding in his exam that Wills was able to tandem walk, walk on heels and toes, and hop. (*Id.*) The ALJ cannot be faulted for finding unpersuasive a doctor who issues such an internally inconsistent opinion. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (noting that even under the stricter, since-rescinded "treating source rule," an ALJ could discount a treating physician's opinion if it was internally inconsistent). And it does not matter that the Court might have evaluated Dr. Rosteing's opinion differently. Substantial evidence supports the decision, and under the deferential standard of review, that is enough. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or

substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review.").

II. **The ALJ's RFC Accounted for All Limitations Supported by the Medical Evidence of Record.**

A claimant's RFC is "an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all imitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). And "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In other words, the ALJ must build a "logical bridge" between the evidence of record and the RFC assessed. *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

Here, the ALJ determined that Wills had the RFC:

> to perform light work . . . except: he can occasionally climb ladders, ropes, or scaffolds and can occasionally climb ramps or stairs. He can occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the left upper extremity. He must avoid unprotected heights. The claimant must have access to a bathroom at the worksite.

(ECF No. 16-3 at 23.) Wills argues that this RFC ignored his diminished grip strength and failed to account for the combined impact of his conditions, especially obesity and sleep apnea.

Dr. Rosteing conducted dynamometer testing that established, as of February 2019, Wills had lost 80 percent of the grip strength in his right hand and more than 70 percent of the grip strength in his left. (ECF No. 28 at 6-7.) The ALJ never mentioned these results, nor does anything in his RFC assessment obviously accommodate any limitations they may entail. This could be reversible error. In *Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014), the Seventh Circuit reversed an ALJ whose RFC did not provide any handling limitations despite evidence that a claimant's grip strength was "well below the normal range." Wills believes the ALJ made the same mistake here. But there is an important difference between this case and *Herrmann*. In *Herrmann*, the ALJ conflated "fingering" and "handling" and refused to include a limitation with respect to the latter because of the absence of any deficit in the former. *Id.* Here, by contrast, the ALJ fashioned an RFC largely consistent with the opinions of state agency medical consultants

Dr. Pat Chan and Dr. Mina Khorshidi. The ALJ found both opinions "somewhat persuasive." (ECF No. 16-3 at 28.) And both doctors opined that Wills had no handling limitations. (ECF No. 16-4 at 12, 39.) Crucially, both doctors also reviewed Dr. Rosteing's report. (*Id.* at 8, 34.) In other words, "the ALJ adopted the limitations suggested by the . . . reviewing doctors, who were aware of [Wills' subpar grip strength]," so grip strength "factored indirectly into the ALJ's decision as part of the doctors' opinions." *Skarbek*, 390 F.3d at 504.

The same can be said for Wills' obesity and sleep apnea. The ALJ discussed both conditions at length. (ECF No. 16-3 at 27-28.) He also adopted limitations proposed by doctors who considered both impairments. (*Id.* at 28.) This is enough to satisfy the substantial evidence standard.

### III. The ALJ Properly Evaluated Wills' Self-Reported Symptoms.

An ALJ must evaluate a claimant's credibility. SSR 16-3p, 2017 WL 5180304, *3-5 (Oct. 25, 2017); *see Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020). This is a two-step process. First, the ALJ asks "whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. "Second, the ALJ considers whether the record supports the severity of the symptoms the [individual] alleges." *Apke*, 817 F. App'x at 257. In making the second determination, the ALJ must examine the objective medical evidence as well as other evidence, including daily activities, aggravating factors, and treatment. 20 C.F.R. §404.1529(c)(1)-(3). And he must at least acknowledge evidence that runs counter to his conclusions. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Once the credibility determination is made, courts afford it "'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Wills argues that the ALJ's credibility determination is patently wrong because it improperly equated improvement with an ability to work full time, ignored evidence of narcotics prescriptions, and failed to consider daily activities. A patient who improves with treatment is not necessarily one fit for the workforce, *see Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011), but the ALJ never suggested as much. Instead, consistent with applicable regulations, he observed that Wills' continuous improvement over time tended to negate his subjective allegations. *See* SSR 16-3p, at *8 (instructing ALJs to consider treatment that relieves pain or other symptoms); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("[I]f the presence of objective indicators . . .

makes a claim more plausible, their absence makes it less so."). Wills himself reported feeling "great" just weeks after his last cardiac procedure. (ECF No. 16-15 at 114.) There is reason to doubt the word of a claimant who tells his doctors one thing and the legal system another. Skepticism is further warranted when the objective medical evidence does not substantiate the degree of the impairment alleged. *See Simila v.* Astrue, 573 F.3d 503, 519 (7th Cir. 2009) (While an ALJ may not reject a claimant's subjective symptoms solely because they are not supported by the objective medical evidence, the ALJ may, and indeed must, "consider[] the objective evidence along with a host of other factors named in the regulations.").

But Wills persists. He claims the ALJ myopically focused on improvement to the exclusion of other factors that would have supported a positive credibility finding. Even if the ALJ did overlook other evidence in the record, though, any error was harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (applying harmless error analysis to ALJ decisions). For instance, Wills argues he was prescribed Tramadol, a powerful narcotic, and "taking heavy doses of strong drugs indicates that [a] claimant's complaints of pain are likely credible." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (citation omitted). Yet the ALJ never mentioned Tramadol in his decision. This oversight, if that is indeed what it was, actually benefited Wills. While Wills was taking Tramadol in February 2019, ECF No. 16-15 at 31, it was no longer listed as one of his medications on June 6, 2019, ECF No. 16-7 at 20, or March 4, 2020. (*Id.* at 40.) That he ceased narcotics usage around the same time he reported feeling "great" is no boon to his credibility. As for Wills' daily activities, the ALJ discussed those. (ECF No. 16-3 at 21-22.) This occurred prior to the credibility determination, but an ALJ's decision should be read "as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), and "discussion from one part of [the] decision may be imputed to another aspect of the analysis." *Gibson v. Colvin*, No. 3:14-CV-01741-CAN, 2016 WL 860673, at *7 (N.D. Ind. Mar. 7, 2016). The ALJ was aware of Wills' daily activities but found, on balance, the SSR 16-3p factors cut against him. It is not this Court's job to reweigh the evidence and reach a different conclusion.

### IV. The Removability of the Acting Commissioner of Social Security is Not a Reason for Remand.

Last, Wills argues that the ALJ lacked the authority to adjudicate his claim because any authority he had was derived from the Acting Commissioner of Social Security, who holds office on a constitutionally illicit basis. The parties agree that 42 U.S.C. Section 902(a)(3), which limits the President's authority to remove the Acting Commissioner without good cause, violates the

separation of powers principle articulated in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). (ECF No. 27 at 16-17.) But even where an unconstitutional removal restriction exists, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021). "[T]he unlawfulness of the removal provision does not strip [an official] of the power to undertake the other responsibilities of [her] office." *Id.* at 1788 n.23. In other words, to obtain remand, Wills must show that the improper removal restriction actually harmed him. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022). He can make no such showing.

Moreover, "[e]very court [including this one] that has addressed the merits of [Wills'] constitutional claim has rejected it." *Robinson v. Kijakazi*, No. 21-cv-238-SCD, 2022 WL 443923, at *7 (E.D. Wis. Feb. 14, 2022) (collecting cases). Because Wills cannot show compensable harm, remand is unwarranted.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 13, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge